# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL BOONE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17−cv–0866−SMY ) |
| WEXFORD HEALTH SOURCES, INC., ALFONSO DAVID, CALDWELL, M. SWALLS, JOHN DOE #19, and JOHN DOE #20 | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Michael Boone, an inmate at Shawnee Correctional Center ("Shawneed"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks declarative relief and damages. This case is now before the Court for a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Amended Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Amended Complaint</u>**

Plaintiff suffers from Type-II diabetes, hypertension and neuropathy. (Doc. 14, p. 6). He entered Shawnee Correctional Center on August 21, 2013. (Doc. 14, p. 7). Once there, Defendant David reduced Plaintiff's Metformin prescription which was issued to treat his diabetes. (Doc. 14, pp. 7-8). As a result, Plaintiff's diabetes worsened. (Doc. 14, p. 8). David also increased Plaintiff's dosage of Glipizide, which had an additional negative impact on Plaintiff's diabetes. *Id.* On March 11, 2014, David returned Plaintiff's medication levels to what they were prior to his incarceration at Shawnee. *Id.* Plaintiff's diabetes improved once his medication levels were restored.

On November 28, 2014, Defendant Caldwell reduced Plaintiff's Neurontin prescription which he had been taking to address the neuropathy in his feet. *Id.* On December 17, 2014,

2

Plaintiff complained that the reduction in medication caused him to experience more severe pain in his feet. *Id.* Although Caldwell restored the previous dosage that same day, Plaintiff attributes a stumble he experienced on December 24, 2014 to the reduction in medication between November 28, 2014 and December 17, 2014. (Doc. 14, p. 9).

Plaintiff received a low gallery/low bunk permit and a slow walk permit on January 30, 2015. *Id.* Ultimately, the low bunk/low gallery permit was made indefinite on September 18, 2015. (Doc. 14, p. 10). His slow walk permit was repeatedly renewed until August 1, 2017. *Id.*

In 2016, Defendants John Doe #19 and #20 changed the policy at Shawnee to require that inmates with slow walk permits lead line movements as a method of ordering and controlling the pace of other inmates. (Doc. 14, p. 11). When Plaintiff is at the front of the line, he receives threats from other inmates about the slow pace he sets. *Id.* Plaintiff filed a grievance on this issue, and Defendant Swalls threatened him with segregation if he continued to complain. *Id.*

Plaintiff originally filed this lawsuit on July 10, 2017in the Central District of Illinois. (Doc. 14, p. 11). Judge Baker issued an Order screening the original Complaint and transferring the case to this district on August 14, 2017. (Doc. 14, p. 12).

Plaintiff met with David on August 23, 2017 and informed him that he had filed a lawsuit naming him as a defendant. *Id.* David told Plaintiff that , due to a change in IDOC policy, he would not renew Plaintiff's low bunk/low gallery permits or his slow walk permit. *Id.* Plaintiff alleges that David made the decision without reference to his physical symptoms and in retaliation for Plaintiff filing the instant action. (Doc. 14, pp. 12-13).

After the case was transferred to this district, Plaintiff moved to file an Amended Complaint and leave was granted pursuant to Fed. R. Civ. P. 15(a). The Amended Complaint was filed on October 3, 2017. (Docs. 12-14).

**Discussion**

Based on the allegations of the Amended Complaint, the Court finds it convenient to divide the pro se action into 5 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1** – David was deliberately indifferent to Plaintiff's diabetes in violation of the Eighth Amendment when he changed the amounts of Plaintiff's diabetes medication;
>
> **Count 2** – Swalls retaliated against Plaintiff in violation of his First Amendment rights when he threatened Plaintiff with segregation for filing a grievance asserting that the policy regarding slow walkers put him at risk;
>
> **Count 3** – David retaliated against Plaintiff for filing this lawsuit in violation of the First Amendment by refusing to renew Plaintiff's low bunk/low gallery permit.

Plaintiff has also attempted to bring other Counts, but for the reasons discussed below, these claims do not survive threshold review:

> **Count 4** – Caldwell was deliberately indifferent to Plaintiff's neuropathy when he reduced the dosage of Plaintiff's pain medication for 19 days in 2014;
>
> **Count 5** – John Does #19 and #20 promulgated a policy in violation of the Eighth Amendment and the Americans with Disabilities Act ("ADA") when they required inmates with slow walk permits to walk in the front of the line;

**Count 1**

Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state such a claim, an inmate must show that he 1) suffered from an objectively serious medical

condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).

An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference may also be shown where medical providers persist in a course of treatment known to be ineffective. *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Here Plaintiff has stated a colorable claim against David for deliberate indifference. Plaintiff alleges that he suffers from Type-II diabetes, a serious medical condition. Moreover, he alleges that David changed his medication, causing his diabetes to become less controlled and that there was a significant delay in restoring his proper medication levels. On these facts, Plaintiff has adequately alleged that he suffered from a serious medical need and David's medical care was deliberately indifferent to that need. Thus, Count 1 shall proceed against Defendant David.

## Count 2

To succeed on a First Amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th

Cir. 2009). Engagement with the grievance process is protected conduct. Here Plaintiff alleges that he filed a grievance regarding the slow line policy. Further, he implies, but does not specifically allege, that Swalls found out about the grievance and threatened Plaintiff with segregation if he did not stop complaining about the policy of placing those with slow walk permits at the head of the line. Such a threat may sufficiently chill protected First Amendment activity so as to state a claim for retaliation. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). Therefore Count 2 shall proceed against Defendant Swalls.

**Count 3**

Plaintiff likewise has a viable claim for retaliation against David. He alleges that when David found out that he had filed this lawsuit, David refused to renew medical permits that had been previously issued for significant periods of time. Plaintiff further alleges that David did so without reference to his medical condition. Filing a lawsuit is protected First Amendment activity, and the Amended Complaint alleges that David terminated Plaintiff's permits in the same meeting during which Plaintiff told David that he filed a lawsuit against him. The timing suggests retaliation and withholding medical treatment is the type of conduct that could plausibly chill speech. These allegations are sufficient to state a claim for retaliation, and Count 3 will proceed against David.

**Count 4**

Plaintiff's allegations against Defendant Caldwell for deliberate indifference to his serious medical needs fails to state a claim. Plaintiff alleges that Caldwell was indifferent to his neuropathy pain when he reduced his dosage of Neurontin. However, Plaintiff alleges no facts to suggest that Caldwell knew that the effect of reducing his Neurontin would be to increase Plaintiff's pain. Significantly, Plaintiff also alleges that when he brought his increased pain to

Caldwell's attention, Caldwell immediately and promptly restored the previous dosage. As a result, Plaintiff was without his preferred dosage for less than 3 weeks. This facts are insufficient to support a claim for deliberate indifference. Therefore **Count 4** will be dismissed with prejudice for failure to state a claim.[1]

**Count 5**

Count 5 will also be dismissed with prejudice. Although Plaintiff states that he brings this claim under the Eighth Amendment and § 1983, he does not allege that he was harmed in any way by being forced to lead the line. As Section 1983 is a tort statute, Plaintiff must have suffered a harm to have a cognizable claim. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009); *Doe v. Welborn,* 110 F.3d 520, 523 (7th Cir.1997). Additionally, the Eighth Amendment seeks to protect inmates against cruel and unusual punishment, but there is nothing inherently cruel and unusual about being asked to lead the line – it is a typical incident of ordinary prison life. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016).

Plaintiff's Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, claim will be dismissed with prejudice because Plaintiff has not specifically alleged that he was deprived of the opportunity to participate in prison programs. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a

---

[1] The dismissal is with prejudice because Plaintiff has already amended once as a matter of course. *See Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014 (7th Cir. 2013).

disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a)." *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). No. 14-2663, 2015 WL 525826, at *5 (7th Cir. Feb. 10, 2015).

Here, Plaintiff has not identified a program at issue. It appears that his preference is to walk near the end of the line, but that is not a program within the meaning of the term under the ADA. Additionally, although Plaintiff alleges that other inmates grumbled at him when he led the line, he has not alleged that he was attacked or that he otherwise suffered any harm as a result. Thus, his claim fails. Accordingly, Count 5 will be dismissed with prejudice as legally frivolous.

### Wexford Health Sources

Plaintiff also named Wexford Health Sources as a defendant in his Amended Complaint. While Wexford appears in the case caption, it is not included in the list of other defendants and Plaintiff makes no allegations against Wexford in the body of the Amended Complaint. The reason that plaintiffs, even those proceeding *pro se*, are required to associate specific defendants with specific claims is so defendants are put on notice of the claims brought against them. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

8

Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). For these reasons, Wexford will be dismissed from this action without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1-3** survive against David and Swalls. Wexford will be **DISMISSED without prejudice**. **Counts 4 and 5** will be **DISMISSED with prejudice**. Caldwell, John Doe #19, and John Doe #20 will be **DISMISSED with prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants David and Swalls: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting

service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 28, 2017**

s/ STACI M. YANDLE<br>**U.S. District Judge**